1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE R. ROBINSON, | ) Case No. ED CV 11-2010 JCG |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

Dwayne R. Robinson ("Plaintiff") challenges the Social Security Commissioner's ("Defendant") decision denying his application for disability benefits. Specifically, Plaintiff contends, among other things, that the Administrative Law Judge ("ALJ") improperly rejected the opinion of his treating psychiatrist, Dr. David Aryanpur. (Joint Stip. at 6-13.) The Court agrees with Plaintiff.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as

1    an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

2         Where the "treating doctor's opinion is contradicted by another doctor, the

3    [ALJ] may not reject this opinion without providing specific and legitimate reasons

4    supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal

5    quotation marks and citation omitted).  The ALJ can meet the requisite specific and

6    legitimate standard "by setting out a detailed and thorough summary of the facts and

7    conflicting clinical evidence, stating his interpretation thereof, and making findings."

8    *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks

9    and citation omitted).

10        Here, the ALJ gave *four* reasons for discrediting the opinions of Dr. Aryanpur.

11   The Court addresses – and rejects – each reason below.

12        A.    Plaintiff's Global Assessment of Functioning ("GAF")[1/] Scores

13        In two separate instances, the ALJ asserted that Plaintiff's GAF scores of 47

14   and 50, respectively assessed by Dr. Aryanpur on March 20, 2008 and March 23,

15   2009, are not supported by the record.  (AR at 30.)  Specifically, the ALJ found

16   these scores to be exaggerated and generally "inconsistent" with other,

17   contemporaneous findings by Dr. Aryanpur pointing to benign impairments.  (*Id.*)

18   The Court disagrees.

19        To fall within the 41-50 range, an individual need only possess a "serious

20   impairment in social, occupational or school functioning (*e.g.*, no friends, unable to

21   keep a job)."  DSM-IV at 34 (bold and capitalization omitted).

22        Here, both the March 20, 2008 and March 23, 2009 reports mentioned serious

23   impairments that arguably would fall within this range, but the ALJ discussed none

---

25   [1/]   A GAF score is the clinician's judgment of the individual's overall level of

26   functioning.  It is rated with respect only to psychological, social, and occupational

27   functioning, without regard to impairments in functioning due to physical or

     environmental limitations.  *See* American Psychiatric Association, *Diagnostic and*

28   *Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).

1    of them.  Instead, the ALJ cited only those portions of the reports that suggested that

2    certain impairments were not severe.  *See Aukland v. Massanari*, 257 F.3d 1033,

3    1035 (9th Cir. 2001) (the ALJ's decision "'cannot be affirmed simply by isolating a

4    specific quantum of supporting evidence.'" (quoting *Sousa v. Callahan*, 143 F.3d

5    1240, 1243 (9th Cir. 1998))).

6         For instance, the March 20, 2008 report noted impairments like hallucinations,

7    hearing voices, decreased concentration, irritability, excessive anxiety, and

8    withdrawn and restricted emotions.  (AR at 447-51.)  Adding context, this report

9    also discusses an incident just a few months earlier where Mr. Robinson was

10   involuntarily committed for attempting suicide by "hold[ing] [a] gun to [him]self" in

11   an "intoxicated, depressed state."  (AR at 451.)  Yet, despite these troubling

12   conditions, the ALJ found that the report was inconsistent with its GAF score by

13   only referring to its findings regarding Plaintiff's normal behavior, thought process,

14   alertness, and hygiene.  (AR at 30.)

15        Likewise, as to the March 23, 2009 report, the ALJ selectively cited its benign

16   observations, including findings that Plaintiff had unremarkable behavior, neat

17   hygiene, appropriate dress, and a normal thought process.  (AR at 30.)  However,

18   contrary to the ALJ's characterization, this report also discussed far more serious

19   disorders, such as a depressed mood, declining interests, feelings of worthlessness,

20   insomnia, irritability, decreased concentration, fatigue, excessive anxiety, and daily

21   outbursts of anger.  (*See* AR at 559-64.)

22        Arguably, many of these omitted impairments could have fallen within the 41-

23   50 range of GAF scores, and thus, at minimum, they warranted discussion.  *See*

24   *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the

25   power of the [Commissioner] to make findings . . . and to weigh conflicting

26   evidence, he cannot reach a conclusion first, and then attempt to justify it by

27   ignoring competent evidence in the record that suggests an opposite result") (internal

28   citation omitted).  Accordingly, in light of the ALJ's error, the Court is unable to

1    find that the ALJ offered a specific and legitimate reason here.

2         B.    The Decrease in GAF Scores

3         As her second reason, the ALJ suggested that Dr. Aryanpur assigned certain

4    GAF scores without explanation or basis in the record.  (AR at 30.)  Specifically, the

5    ALJ pointed out that Dr. Aryanpur offered "no explanation for the sudden decrease

6    in [Plaintiff's GAF] score [from 55 on March 12, 2008 to 47 on March 20, 2008]

7    and his records do not support [such a] decline."  (*Id.*)

8         However, the ALJ appears to have misread the evidence here.  It was nurse

9    Ivan Batchkoff – not Dr. Aryanpur – that assessed the first GAF score of 55 on

10   March 12, 2008.  (AR at 457-62.)  Thus, there is no inconsistency between the

11   March 12, 2008 and March 20, 2008 reports for Dr. Aryanpur to explain away.

12   Accordingly, this reason does not qualify as a specific and legitimate one.

13        C.    Dr. Aryanpur's Opinion Regarding Plaintiff's Ability to Maintain

14              Employment

15        The ALJ also discounted Dr. Aryanpur's November 14, 2008 statement that

16   Plaintiff "probably cannot maintain fulltime employment but possibly may be able to

17   work part time."  (AR at 30, *see* AR at 383.)  In doing so, the ALJ pointed to two

18   records, dated just months before, that allegedly suggest that Plaintiff "is able to

19   perform work activity."  (AR at 30.)  The first, dated September 23, 2008, described

20   Plaintiff as appearing "quite stable and motivated to return to work."  (AR at 30; *see*

21   AR at 506.)  The second, dated October 31, 2008, reported that Plaintiff was "doing

22   well."[2/]  (AR at 30; *see* AR at 498.)  The Court, however, finds the ALJ's

23   determination unconvincing for three reasons.

24        First, Plaintiff's *desire* to work is not relevant to whether he is, in fact, *able to*

25

26   _____

27        [2/]   Both here and elsewhere, the ALJ cites, in discrediting Dr. Aryanpur, the fact
     that Plaintiff assists his mother and son.  (*See* AR at 30.)  For the sake of efficiency,
28   the Court will address the merits of this contention below.  *See infra* at § D.

                                        4

1  work.

2      Second, short, isolated remarks like Plaintiff is "quite stable" or is "doing
3  well" offer little of medical value.  That is, it not known whether these assessments
4  refer to Plaintiff's general mood, his hallucinations, or perhaps even his suicidal
5  thoughts.  Discrediting the extensive opinions of a treating physician on the basis of
6  such vague statements is, therefore, tenuous.

7      Third, the inadequacy of such a credibility determination is all the more
8  striking considering that the medical record numbers over 400 pages.

9      Accordingly, the ALJ's reason here does not satisfy the specific and legitimate
10  standard.

11          D.      Evidence of Plaintiff Caring for His Mother and Son

12      As her fourth and final reason, the ALJ twice suggests that the limitations
13  assessed by Dr. Aryanpur are "inconsistent" with the fact that Plaintiff cares for his
14  mother and son.  (AR at 30.)  Two reasons undermine the ALJ's conclusion here.

15      First, daily activities like "taking care of oneself, household tasks, hobbies,
16  school attendance, club activities, or social programs" are not typically considered
17  substantial gainful activities.  *Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001).
18  Such activities can only discredit a claimant's impairments if they are transferable to
19  a work setting and constitute a substantial portion of one's day.  *Fair v. Bowen*, 885
20  F.2d 597, 603 (9th Cir. 1989).  The ALJ provided no evidence – and the Court
21  cannot find any – that would suggest that either is the case here.

22      Second, it is suspect that the ALJ discarded at least four disability assessments
23  by Dr. Aryanpur, a treating physician, on the basis of a single report observing that
24  Plaintiff "assist[s] his elderly mother and son."  (*See* AR at 498.)  At minimum, to
25  satisfy the specific and legitimate standard, the ALJ should have offered some sort
26  of explanation of why such evidence is truly "conflicting."  *See Magallanes*, 881
27  F.2d at 751.

28      Thus, for the reasons stated above, the Court is unable to find any specific and

legitimate reasons supporting the ALJ's rejection of Dr. Aryanpur's opinions. Accordingly, the Court finds that the ALJ's decision was not supported by substantial evidence. *See Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

### E.   Remand is Warranted

With error established, this Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See id.* at 594.

Here, in light of the ALJ's error, Dr. Aryanpur's credibility must be properly assessed.  Therefore, on remand, the ALJ shall reevaluate the opinions of Dr. Aryanpur and either credit them as true, or provide valid reasons for any portion that is rejected.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

1       Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

2  **REVERSING** the decision of the Commissioner denying benefits and

3  **REMANDING** the matter for further administrative action consistent with this

4  decision.[3/]

5

6  Dated: October 31, 2012

7              _____

8                     Hon. Jay C. Gandhi

9                United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     [3/]   In light of the Court's remand instructions, it is unnecessary to address

28  Plaintiff's remaining contentions.  (*See* Joint Stip. at 20-26.)

7